ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-DJ2025-063A

| | | |
|---|---|---|
| **PONCE MEDICAL SCHOOL FOUNDATION INC. h/c/c INNO DIAGNOSTICS**<br><br>Peticionaria<br><br>v.<br><br>**PR CLINICAL REFERENCE LABORATORY, INC.**<br><br>Peticionarios | TA2026CE00448 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Civil Núm.: **PO2025CV03241**<br><br>Sobre: Cobro de Dinero Ordinario |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2026.

Comparece ante nos Ponce Medical School Foundation Inc. h/c/c Inno Diagnostics (parte peticionaria), mediante un recurso de *certiorari*, y nos solicita que revoquemos una *Orden* emitida el 30 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI).[1] Mediante dicho dictamen, el foro primario declaró No Ha Lugar la *Moción Solicitando Ejecución de Sentencia por Incumplimiento de Estipulación y en Cobro de Penalidad y Honorarios de Abogado* (en adelante, Moción de Ejecución de Sentencia).[2]

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

## I.

El presente caso tiene su génesis el 10 de noviembre de 2025, cuando la parte peticionaria presentó una *Demanda* contra la PR

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, Entrada Núm. 22. Notificada y archivada en autos el 30 de marzo de 2026.
[2] *Íd.*, Entrada Núm. 17.

Clinical Reference Laboratory, Inc. (parte recurrida) en concepto de cobro de dinero.[3] En síntesis, la parte peticionaria sostuvo que la parte recurrida adeudaba una suma total de $51,346.20, compuesta por una partida de $48,846.20 de facturas vencidas y otra cantidad de $2,500.00 por reactivo no devuelto. Por tal razón, la parte peticionaria reclamó dichas cuantías al foro primario, más costas incurridas; $11.96 por cada día, en concepto de mora; y $5,000.00 por honorarios de abogado.

El 16 de enero de 2026, la parte peticionaria radicó una *Solicitud de Anotación de Rebeldía e Imposición de Pago de Gastos de Diligenciamiento de Emplazamiento y Honorarios de Abogado*.[4] Ese mismo día, el TPI emitió una *Orden* en la que, luego de haber acreditado el emplazamiento, anotó la rebeldía a la parte recurrida por no haber presentado alegación responsiva en el término dispuesto para ello.[5]

Conforme a lo anterior, el 20 de enero de 2026, el foro primario emitió una *Sentencia* en rebeldía donde condenó a la parte recurrida al pago de las partidas reclamadas acumulando intereses a razón de 8.00% desde la fecha en que se dictó la sentencia hasta que fuesen satisfechas, conforme a la Regla 44.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3.[6]

No obstante, el 26 de enero de 2026, ambas partes radicaron una *Estipulación, para que se Deje sin Efecto Sentencia del 20 de Enero de 2026 y se Emita Sentencia Enmendada/por Estipulación*.[7] Así, el 5 de febrero de 2026, el foro primario dictó una *Orden* en la que dejó sin efecto la *Sentencia* dictada el 20 de enero de 2026 y expuso "[e]l tribunal dispondr[á] de la estipulación presentada".[8]

---

[3] *Íd.*, Entrada Núm. 1.
[4] *Íd.*, Entrada Núm. 5; véase además, *Íd.*, Entradas Núms. 6, 8 y 9.
[5] *Íd.*, Entrada Núm. 7. Notificada y archivada en autos el 20 de enero de 2026.
[6] *Íd.*, Entrada Núm. 10. Notificada y archivada en autos el 21 de enero de 2026.
[7] *Íd.*, Entrada Núm. 11; véase además, *Íd.*, Entrada Núm. 13.
[8] *Íd.*, Entrada Núm. 15. Notificada y archivada en autos el 9 de febrero de 2026.

Consecuentemente, el 10 de febrero de 2026, el TPI emitió una *Sentencia* con los acuerdos informados por las partes, incluyendo una cláusula penal ante posible incumplimiento con el mismo.[9] Específicamente, el dictamen dispuso lo siguiente:

El 20 de enero de 2026, este Tribunal dictó Sentencia en el caso de epígrafe. Posteriormente, el 26 de enero de 2026, la parte demandante, Ponce Medical School Foundation, Inc., h/n/c Inno Diagnostics, y la parte demandada, PR Clinical Reference Laboratory, Inc., presentaron una "ESTIPULACIÓN, PARA QUE SE DEJE SIN EFECTO SENTENCIA DEL 20 DE ENERO DE 2026 Y SE EMITA SENTENCIA ENMENDADA POR ESTIPULACION".

En consideración a los acuerdos informados, disponemos dejar sin efecto la Anotación de Rebeldía a la parte demandada PR Clinical Reference Laboratory, Inc., y acoger los acuerdos esbozados por las partes y que se detallan a continuación:

La parte demandada se obliga a pagar a la parte demandante el 100% de la deuda reclamada en la demanda, ascendente a la suma total de $51,346.20, distribuida de la siguiente forma:

a. Un primer pago de $25,673.10, en o antes del lunes, 26 de enero de 2026[.]

b. Un segundo pago de $25,673.10, el lunes, 23 de febrero de 2026.

c. Ambos pagos deberán ser entregados mediante mensajero en las oficinas de INNO Diagnostics.

d. La parte demandada se obliga, además, al pago de las costas incurridas en el caso, por la suma de $446.54, las cuales serán pagaderas el 26 de enero de 2026.

e. Asimismo, la parte demandada se obliga al pago de intereses, fijados para fines estrictamente transaccionales en la suma de $400.00, los cuales serán pagaderos el 26 de enero de 2026.

f. Las partes acuerdan que la presente estipulación será radicada ante este Honorable Tribunal y que los términos aquí consignados serán recogidos mediante una Sentencia Enmendada, a los fines de que, en caso de incumplimiento, la parte demandante pueda proceder directamente con la ejecución de la sentencia enmendada, sin necesidad de iniciar un nuevo pleito.

g. Las partes estipulan expresamente que, ante el incumplimiento de cualquiera de los pagos en las fechas pactadas, salvo fuerza mayor, la parte demandada: 1. Incurrirá automáticamente en una penalidad

---

[9] *Íd.*, Entrada Núm. 16. Notificada y archivada en autos el 10 de febrero de 2026.

equivalente al 50% del total de la deuda de $51,346.20 reclamada en la demanda; y 2. Vendrá obligada, además, al pago de $5,000.00 por concepto de honorarios de abogado, sin perjuicio de la ejecución inmediata de la sentencia enmendada.

h. Las partes reconocen que la presente estipulación constituye un acuerdo válido, vinculante y exigible, y que fue alcanzado de forma voluntaria, informada y con la asesoría legal correspondiente.

El tribunal acoge los términos de la Estipulación presentada y dicta Sentencia de conformidad. Se ordena el cumplimiento estricto con los términos del acuerdo. Se apercibe a la parte demandada que, de incumplir con lo aquí estipulado, la parte demandante podrá solicitar la ejecución de la sentencia por el balance adeudado, según los términos estipulados.[10]

Ulteriormente, el 12 de marzo de 2026, la parte peticionaria presentó una *Moción Solicitando Ejecución de Sentencia por Incumplimiento de Estipulación y en Cobro de Penalidad y Honorarios de Abogado.*[11] Arguyó que la parte recurrida incumplió con el segundo pago pautado para el 23 de febrero de 2026. Alegó que, a pesar de que la parte recurrida entregó un cheque en la fecha establecida, el mismo fue devuelto presuntamente por falta de fondos. Sostuvo que el 27 de febrero de 2026, notificó a la parte recurrida sobre lo acontecido y, ante ello, requirió el pago del segundo plazo más honorarios de abogado, advirtiendo que, de no recibirlo en el término concedido, acudiría al Tribunal en ejecución de sentencia. Por último, expresó que, si bien el segundo pago fue realizado posterior a la fecha pactada, no era la primera vez que la parte recurrida incumplía con el plan de pago.

Por su lado, el 24 de marzo de 2026, la parte recurrida presentó una *Oposición a Solicitud de Ejecución de Sentencia.*[12] En cuanto al segundo pago, expuso que depositó un cheque en el día estipulado; es decir, el 23 de febrero de 2026. Sin embargo, por un asunto fuera de su control, alegó que el banco se equivocó y no pagó

---

[10] *Íd.*
[11] *Íd.*, Entrada Núm. 17.
[12] *Íd.*, Entrada Núm. 19.

el cheque dentro del tiempo que tomaba el trámite regular de procesamiento. La parte recurrida planteó que, el mismo día en que recibió el correo electrónico del representante legal de la parte peticionaria, gestionó el pago por medio de un cheque. Asimismo, arguyó que no aplicaba la cláusula penal, dado a que el error del banco constituyó fuerza mayor y procedía la doctrina de *rebus sic stantibus*.

El 30 de marzo de 2026, la parte peticionaria presentó una *Réplica a "Oposición a Solicitud de Ejecución de Sentencia"*.[13] Alegó que, al optar por realizar sus pagos mediante cheques sujetos a procesos bancarios internos, la parte recurrida asumió el riesgo del fallo de las transacciones. Sostuvo que la buena fe *ex post facto* no desactivaba la cláusula penal de forma automática ni aplicaba la norma de *rebus sic stantibus*, pues la controversia versó sobre un simple error bancario. Además, indicó que no procedía la moderación judicial de la pena, más aún cuando la estipulación transaccional tenía para las partes autoridad de cosa juzgada.

El 30 de marzo de 2026, el TPI emitió una *Orden* donde expresó "No Ha Lugar", sin más.[14] Posteriormente, el 6 de abril de 2026, la parte peticionaria presentó una *Moción Solicitando Aclaración de Orden*.[15] Ante ello, el foro primario dictó "No Ha Lugar a la ejecución de sentencia solicitada por la parte demandante en este momento".[16]

Insatisfecha, el 13 de abril de 2026, la parte peticionaria radicó ante nos un auto de *certiorari* donde señaló al TPI por la comisión de los siguientes errores:

> **PRIMER ERROR: EL TRIBUNAL ERRÓ AL DENEGAR LA EJECUCIÓN DE LA SENTENCIA ENMENDADA PARA EL COBRO DE HONORARIOS DE ABOGADOS Y UNA PENALIDAD POR PAGO TARDÍO, CONTRAVINIENDO LA DOCTRINA DE COSA**

---

[13] *Íd.*, Entrada Núm. 21.
[14] *Íd.*, Entrada Núm. 22. Notificada y archivada en autos el 30 de marzo de 2026.
[15] *Íd.*, Entrada Núm. 23.
[16] *Íd.*, Entrada Núm. 24. Notificada y archivada en autos el 7 de abril de 2026.

**JUZGADA DERIVADA DE LA ESTIPULACIÓN TRANSACCIONAL.**

**SEGUNDO ERROR: ERRÓ EL TPI AL EXIMIR A LA DEMANDADA DE UNA CLÁUSULA PENAL ESTIPULADA AL AMPARARSE IMPLÍCITAMENTE EN LA DEFENSA DE "FUERZA MAYOR" O "REBUS SIC STANTIBUS", CUANDO LA JURISPRUDENCIA ES CLARA: LA INSUFICIENCIA DE FONDOS NO CONSTITUYE FUERZA MAYOR.**

**TERCER ERROR: ERRÓ EL TPI AL EJERCER UNA SUPUESTA FACULTAD MODERADORA EN EQUIDAD SOBRE UNA CLÁUSULA PENAL QUE FUE EXPRESAMENTE PACTADA ENTRE LAS PARTES PARA CASTIGAR EL RETRASO EN EL PAGO.**

Por su parte, el 24 de abril de 2026, la parte recurrida radicó una *Oposición a certiorari.*

## II.

## A.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones realizadas por un foro inferior y cuya expedición descansa en la sana discreción del tribunal. *Rivera v. Arcos Dulces,* 212 DPR 194, 207 (2023); *McNeil Healthcare, LLC v. Municipio de Las Piedras*, 206 DPR 391, 403 (2021). La característica distintiva del auto de *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones". *IG Builders v. BBVAPR*, 185 DPR 307, 338 (2012) (énfasis en el original). No obstante, " 'en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. . . . Es decir, [la] *discreción* es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera' ". *Íd.,* (*citando a Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)) (énfasis en el original); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

Un recurso de *certiorari* es el vehículo adecuado para atender la cuestión planteada. Pues estamos ante una determinación interlocutoria post sentencia que solamente puede ser revisable mediante dicho recurso. De lo contrario, los dictámenes post sentencia quedarían sin posibilidad alguna de revisión apelativa. En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari*. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336-337 (2023). La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por

tanto, de no estar presente ninguno de los criterios esbozados, procede que esta Curia se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty, supra*, págs. 96-97.

**B.**

Es harto conocido que las relaciones que nacen de los contratos se rigen por los principios de la autonomía de la voluntad y *pacta sunt servanda. Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Por un lado, la autonomía de la voluntad dispone que "[e]s facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público". Artículo 1232 del *"Código Civil de Puerto Rico" de 2020* (Código Civil de 2020), Ley Núm. 55 del 1 de junio de 2020, según enmendado, 31 LPRA sec. 9753; *Oriental Bank v. Perapi, supra*, pág. 15. Por otro lado, el principio de *pacta sunt servanda* expone que "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Artículo 1233 del Código Civil de 2020, *supra*, sec. 9754; *López v. González*, 163 DPR 275, 281 (2004). Además, es meritorio mencionar que "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". Artículo 1237 del Código Civil de 2020, *supra*, sec. 9771; *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 228-229 (2007).

**C.**

Por el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre respecto a una relación jurídica. Artículo 1497 del Código Civil de 2020, *supra*, sec. 10641. "La transacción debe constar en un escrito

firmado por las partes o en una resolución o una sentencia dictada por el tribunal". Artículo 1503 del Código Civil de 2020, *supra*, sec. 10647. Este tipo de acuerdo se interpreta restrictivamente y produce los efectos de cosa juzgada. Artículos 1499 y 1500 del Código Civil de 2020, *supra*, sec. 10643-10644; *Rodríguez v. Hospital*, 186 DPR 889, 904 (2012). En ese sentido, cosa juzgada es " 'lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad' ". *Landrau Cabezudo v. Autoridad de los Puertos de Puerto Rico*, 2025 TSPR 7 (*citando a Parrilla v. Rodríguez*, 163 DPR 263, 268 (2004)). Esta norma cumple con el propósito de "impartirle[s] finalidad a los dictámenes judiciales de manera que las resoluciones contenidas en éstos concedan certidumbre y certeza a las partes en litigio". *Parrilla v. Rodríguez, supra*, pág. 268.

Ahora bien, existen dos tipos de transacciones; a saber, las judiciales y las extrajudiciales. La transacción judicial surge cuando, una vez comenzado el pleito, las partes acuerdan eliminar la controversia y lo incorporan al proceso en curso. *Igaravidez v. Ricci*, 147 DPR 1, 6 (1998). Este tipo de acuerdo requiere que surja una vez comenzado el caso y " 'se hace necesario que se someta al conocimiento y aprobación del juzgador lo estipulado e incluso se afirma la necesidad de incorporarla al pleito iniciado' ". *Rodríguez v. Hospital, supra*, págs. 904-905 (*citando a* S. Tamayo Haya, *El contrato de transacción*, Madrid, Thompson y Civitas, 2003, pág. 516). Si no se incorpora el acuerdo, carecerá de sustancia procesal y no servirá de título para ejecutarlo en caso de incumplimiento. *Íd.* Por otro lado, una transacción extrajudicial "resulta ser aquella que se celebra antes de que comience el pleito que se quiere evitar, o cuando una vez comenzado, las partes acuerdan una transacción sin la intervención del tribunal". *Íd.*

**D.**

Cónsono con lo anterior, las partes contratantes pueden estipular una cláusula penal "con el propósito de evitar el incumplimiento parcial o el retraso del cumplimiento de la obligación principal. Las cláusulas así convenidas pueden consistir en el pago de una suma cierta, la pérdida del beneficio del plazo o en cualquier otra pena". Artículo 1257 del Código Civil de 2020, *supra,* sec. 9832. En la aplicación de este tipo de cláusula se debe observar que:

> **(a)** el pago de la pena convenida corresponde exclusivamente al incumplimiento o al retraso; **(b)** el acreedor puede optar por exigir el cumplimiento íntegro o por el pago de la pena, y puede acumular ambos remedios en el caso de cumplimiento tardío; **(c)** la cláusula penal se interpreta restrictivamente; y **(d)** solo puede sustituirse la prestación debida por la convenida en la cláusula penal, si se ha convenido expresamente. Artículo 1257 del Código Civil de 2020, *supra,* sec. 9832;

Debido a su fin punitivo, esta cláusula permite que los daños del acreedor sean evaluados por encima de la medida real del daño, de modo que "este exceso tenga el efecto de presionar al deudor a realizar el cumplimiento específico de la obligación para evitar pagar una indemnización mayor a la prestación a la cual se obligó.". *Xerox Corporation v. Gómez Rodríguez,* 201 DPR 945, 960 (2019). El tribunal "debe reconocer la obligatoriedad de las cláusulas convenidas y solo en tales casos puede sustituirlas o moderarlas". Artículo 1257 del Código Civil de 2020, *supra,* sec. 9832.

Ahora bien, "el tribunal tiene facultad para atemperar las penas en casos de extrema desproporción económica entre la pena y la prestación". *Íd.* "Sin embargo, la facultad moderadora de los tribunales debe usarse sólo con gran cautela y justificación, pues la acción de limitar la autonomía de la voluntad de los contratantes debe ejercerse únicamente en circunstancias extraordinarias.". *Coop. Sabaneña v. Casiano Rivera,* 184 DPR 169, 175 (2011). Este

ejercicio debe ocurrir "únicamente en circunstancias extraordinarias, como medio de templar su excesiva onerosidad para el obligado, o la desorbitada desproporción.". *Jack's Beach Resort, Inc. v. Cia. Turismo*, 112 DPR 344, 350 (1982).

### E.

La fuerza mayor ha sido definida como " 'el acontecimiento que no hemos podido precaver ni resistir; como por ejemplo la caída de un rayo, el granizo, la inundación, el huracán, la irrupción de enemigos, el acometimiento de ladrones' ". *Rivera v. Caribbean Home Const. Corp.*, 100 DPR 106, 112 (1971) (*citando a Vidal v. American Railroad Co.*, 28 DPR 204, 210 (1920)). " '[S]e ocasiona exclusivamente por la violencia de la naturaleza, por una fuerza de los elementos que la capacidad humana no puede prever ni impedir, como por ejemplo por un relámpago, un tornado, una tromba marina, un huracán o por cosas similares' ". *Camacho v. Cía. Popular de Transporte*, 69 DPR 724, 729 (1949)). Por estar basado en la equidad, la fuerza mayor "tiene como su aplicación más importante la de eximir de responsabilidad en el cumplimiento de las obligaciones". *Rivera v. Caribbean Home Const. Corp.*, *supra*, pág. 110.

Asimismo, la doctrina de *rebus sic stantibus* "parte del supuesto que los contratos de tracto sucesivo o de cumplimiento aplazado obligan mientras no ocurran cambios importantes en el estado de hechos contemplado por las partes al momento de contratar". *BPPR v. Sucn. Talavera*, 174 DPR 686, 694 (2008). Tiene como propósito atemperar la severidad e inflexibilidad de la norma de *pacta sunt servanda* permitiéndole así al tribunal intervenir en el acuerdo y evitar que se lacere la buena fe o se cause injusticia al obligar su cumplimiento específico. *Íd.*, pág. 695. Al momento de evaluar la procedencia de la cláusula debe concurrir:

(1) una circunstancia imprevisible como una cuestión de hecho dependiente de las condiciones que concurran en cada caso, lo cual es un requisito fundamental; (2) el cumplimiento con las prestaciones del contrato sea extremadamente oneroso, lo cual también es una cuestión de hecho; (3) no se trate de un contrato aleatorio o haya un elemento de riesgo que sea determinante; (4) ninguna de las partes haya incurrido en algún acto doloso; (5) se trate de un contrato de tracto sucesivo o que esté referido a un momento futuro; (6) la alteración de las circunstancias sea posterior a la celebración del contrato y que presente un carácter de cierta permanencia, y (7) que una parte invoque la aplicación de la doctrina". *Oriental Bank v. Perapi, supra*, pág. 17 (Énfasis omitido).

A pesar de que se trata de un remedio excepcional, "una vez se demuestra la concurrencia de todos los requisitos para su procedencia 'el ámbito remedial del tribunal es amplísimo y flexible' ". *Íd.*, pág. 18 (*citando a Casera Foods, Inc. v. ELA,* 108 DPR 850, 857 (1979)). Entre los remedios se incluyen, sin limitarse a estos y a tenor con las circunstancias de cada caso, "la suspensión temporera de los efectos del contrato; su resolución o rescisión; la revisión de los precios; la suspensión o moratoria, y otros remedios que los tribunales estimen justos y equitativos". *Íd.*

Sin embargo, puede proceder la aplicación de la norma de *rebus sic stantibus* a una controversia en particular, aunque no se encuentran presentes todos los criterios antedichos "cuando se alteren las bases del negocio de forma tal que desaparezca la causa que dio origen al contrato y las prestaciones entre las partes se tornen desproporcionales entre sí". *Íd.*, pág. 19. En estas instancias, ordenar el cumplimiento específico del acuerdo podría vulnerar la buena fe, la autonomía de la voluntad y el principio de *pacta sunt servanda. Íd.*

A pesar de lo anterior, "se trata de un remedio de excepción, para situaciones extraordinarias en que se impone un prudente y escrupuloso discernimiento judicial de moderación". *Casera Foods, Inc. v. ELA, supra*, pág. 857. Por lo tanto, "en todo momento debemos tener presente que a pesar de que pueden surgir circunstancias que

ameriten la invocación de la cláusula *rebus sic stantibus,* 'la obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones econ[ó]micas' ". *Oriental Bank v. Perapi, supra,* págs. 19-20 (*citando a BPPR v. Sucn. Talavera, supra,* pág. 696). Por tal razón, en todo pleito donde se contemple la aplicación de esta norma excepcional, "es un requisito *sine qua non* para su procedencia el que la circunstancia que altera el negocio sea realmente imprevisible". *Íd.,* pág. 20.

### III.

En el caso de marras, debemos dirimir si el foro primario incidió al no imponer la cláusula penal estipulada entre las partes y, consecuentemente, declarar No Ha Lugar la ejecución de la *Sentencia* enmendada. De igual modo, debemos resolver si el foro *a quo* incurrió en error al presuntamente ejercer su facultad moderadora sobre dicha cláusula. A su juicio, el foro primario determinó que no procedía llevar a cabo la ejecución de sentencia, en este momento.

En su primer señalamiento de error la parte peticionaria adujo que el TPI imputó al foro instancia de errar al declarar No Ha Lugar la ejecución de la sentencia con los acuerdos, en contravención con la doctrina de cosa juzgada derivada de la estipulación transaccional. Asimismo, la parte peticionaria señaló que incurrió en error al eximir a la parte recurrida de la cláusula penal acordada entre las partes amparándose implícitamente en la defensa de fuerza mayor o *rebus sic stantibus*, cuando la insuficiencia de fondos no constituía fuerza mayor.

Por su lado, la parte recurrida sostuvo que constituyó fuerza mayor que el banco no realizara la intervención manual a tiempo con el propósito de autorizar el pago del cheque, y, por ende, no aplicaba la cláusula en cuestión.

Es harto conocido que las relaciones que nacen de los contratos se rigen por los principios de la autonomía de la voluntad y *pacta sunt servanda*. *Oriental Bank v. Perapi, supra*, pág. 15. En lo pertinente, el principio de *pacta sunt servanda* expone que "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Artículo 1233 del Código Civil de 2020, *supra*, sec. 9754; *López v. González, supra*, pág. 281 (Énfasis suplido).

En esa misma línea, la transacción judicial surge cuando, una vez comenzado el pleito, las partes llegan a un acuerdo transaccional y lo incorporan al proceso en curso. *Igaravidez v. Ricci, supra*, pág. 5. Este tipo de acuerdo requiere que surja una vez comenzado el caso y " 'se hace necesario que se someta al conocimiento y aprobación del juzgador lo estipulado e incluso se afirma la necesidad de incorporarla al pleito iniciado' ". *Rodríguez v. Hospital, supra*, págs. 904-905 (*citando a* S. Tamayo Haya, *El contrato de transacción*, Madrid, Thompson y Civitas, 2003, pág. 516). Además, este tipo de acuerdo tiene el efecto de cosa juzgada. *Igaravidez v. Ricci, supra*, pág. 5. A esos fines, cosa juzgada es definida como " 'lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad' ". *Landrau Cabezudo v. Autoridad de los Puertos de Puerto Rico, supra* (*citando a Parrilla v. Rodríguez, supra*, pág. 268) (Énfasis suplido). Esta norma cumple con el propósito de "impartirle[s] finalidad a los dictámenes judiciales de manera que las resoluciones contenidas en éstos concedan certidumbre y certeza a las partes en litigio". *Parrilla v. Rodríguez, supra*, pág. 268.

En el presente caso, la parte recurrida presentó la demanda de autos en cobro de dinero por facturas vencidas y reactivos no devueltos. El tracto procesal del foro primario demuestra que, ante la falta de presentación de alegación responsiva en el término

provisto por las Reglas de Procedimiento Civil, *supra,* el TPI le anotó la rebeldía a la parte recurrida. Subsiguientemente, dicho foro emitió una *Sentencia* en rebeldía donde condenó a dicha parte a pagarle a la parte peticionaria las partidas reclamadas. Sin embargo, posteriormente, el foro *a quo* levantó dicha anotación de rebeldía como resultado del <u>acuerdo transaccional alcanzado entre las partes y acogido por el TPI</u>; tratándose de este modo de una transacción judicial. Entiéndase, no solamente dicho acuerdo constituyó ley entre las partes, sino también cosa juzgada.

Por ende, existiendo un fallo <u>firme</u> del tribunal que es <u>irrevocable</u>, el TPI cometió el <u>primer</u> señalamiento de error, pues procedía que se ejecutara la *Sentencia* enmendada emitida el 10 de febrero de 2026 y condenara a la parte recurrida al pago de las sumas recogidas en dicha determinación; a saber, una penalidad equivalente al 50% del total de la deuda de $51,346.20 reclamada en la demanda, más al pago de $5,000.00 por concepto de honorarios de abogado.

Ahora bien, la fuerza mayor ha sido definida como " 'el acontecimiento que no hemos podido precaver ni resistir; como por ejemplo la caída de un rayo, el granizo, la inundación, el huracán, la irrupción de enemigos, el acometimiento de ladrones' ". *Rivera v. Caribbean Home Const. Corp., supra*, pág. 112 (*citando a Vidal v. American Railroad Co., supra*, pág. 210). " '<u>[S]e ocasiona exclusivamente por *la violencia de la naturaleza*</u>, por una fuerza de los elementos que la capacidad humana *no puede prever ni impedir,* como por ejemplo por un relámpago, un tornado, una tromba marina, *un huracán* o por cosas similares' ". *Camacho v. Cía. Popular de Transporte, supra*, pág. 729. (Énfasis suplido). Por estar basado en la equidad, la fuerza mayor "tiene como su aplicación más importante la de eximir de responsabilidad en el cumplimiento de

las obligaciones". *Rivera v. Caribbean Home Const. Corp.*, *supra*, pág. 110.

Del mismo modo, la norma de *rebus sic stantibus* "se trata de un remedio de excepción, <u>para situaciones extraordinarias</u> en que se impone un prudente y escrupuloso discernimiento judicial de moderación". *Casera Foods, Inc. v. ELA*, *supra*, pág. 857 (Énfasis suplido). Por lo tanto, "en todo momento debemos tener presente que a pesar de que pueden surgir circunstancias que ameriten la invocación de la cláusula *rebus sic stantibus*, 'la obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones econ[ó]micas' ". *Oriental Bank v. Perapi, supra*, págs. 19-20 (*citando a BPPR v. Sucn. Talavera, supra,* pág. 695). Por tal razón, en todo pleito donde se contemple la aplicación de esta norma excepcional, "es un requisito *sine qua non* para su procedencia el que la circunstancia que altera el negocio sea realmente imprevisible". *Íd.*, pág. 20.

Por otro lado, las partes contratantes pueden estipular una cláusula penal "con el propósito de evitar el incumplimiento parcial <u>o el retraso del cumplimiento de la obligación principal</u>. Las cláusulas así convenidas pueden consistir en el pago de una suma cierta, la pérdida del beneficio del plazo o en cualquier otra pena". Artículo 1257 del Código Civil de 2020, *supra*, sec. 9832 (Énfasis suplido). En la aplicación de este tipo de cláusula se debe observar que:

> **(a**) el pago de la pena convenida corresponde exclusivamente al incumplimiento o al <u>retraso</u>; **(b)** el acreedor puede optar por exigir el cumplimiento íntegro <u>o por el pago de la pena</u>, y puede acumular ambos remedios en el caso de cumplimiento tardío; **(c)** la cláusula penal <u>se interpreta</u> **restrictivamente**; y **(d)** solo puede sustituirse la prestación debida por la convenida en la cláusula penal, si se ha convenido expresamente". Artículo 1257 del Código Civil de 2020, *supra*, sec. 9832 (Énfasis suplido); *Coop. Sabaneña v. Casiano Rivera, supra,* págs. 174-175.

Tras un análisis objetivo y cuidadoso del expediente, resolvemos que el foro primario erró al declarar No Ha Lugar la ejecución de la sentencia y al eximir a la parte recurrida de cumplir con la cláusula penal bajo la defensa de fuerza mayor. En el presente caso, la *Sentencia* enmendada, emitida el 10 de febrero de 2026, por el foro primario dispone lo siguiente:

> [...]

> b. Un segundo pago de $25,673.10, el lunes, 23 de febrero de 2026.

> [...]

> **g. Las partes estipulan expresamente que, ante el incumplimiento de cualquiera de los pagos en las fechas pactadas, salvo fuerza mayor, la parte demandada: 1. Incurrirá automáticamente en una penalidad equivalente al 50% del total de la deuda de $51,346.20 reclamada en la demanda; y 2. Vendrá obligada, además, al pago de $5,000.00 por concepto de honorarios de abogado, sin perjuicio de la ejecución inmediata de la sentencia enmendada.**

> h. Las partes reconocen que la presente estipulación constituye un acuerdo válido, vinculante y exigible, y que fue alcanzado de forma voluntaria, informada y con la asesoría legal correspondiente.

> El tribunal acoge los términos de la Estipulación presentada y dicta Sentencia de conformidad. Se ordena el cumplimiento estricto con los términos del acuerdo. **Se apercibe a la parte demandada que, de incumplir con lo aquí estipulado, la parte demandante podrá solicitar la ejecución de la sentencia por el balance adeudado, según los términos estipulados.**[17]

(Énfasis suplido).

Conforme se desprende de la estipulación entre las partes, en la misma se incluyó una cláusula penal. Según esta, ante un incumplimiento con lo acordado, incluyendo realizar el pago en la fecha acordada, procedería solicitar la ejecución inmediata de la sentencia enmendada y condenar a la parte recurrida a la penalidad de un 50% de la suma total de $51,346.20, más $5,000.00 en

---

[17] *Íd.*, Entrada Núm. 16.

concepto de honorarios de abogado. Precisamente, luego de dicha *Sentencia*, la parte peticionaria sostuvo que la parte recurrida incumplió con el pago del 23 de febrero de 2026, por falta de fondos y por haberse entregado tardíamente. Ante ello, informó al TPI sobre lo ocurrido y solicitó la ejecución de sentencia, empero el foro primario declaró No Ha Lugar a su petición.

Del expediente ante nuestra consideración se desprende que el segundo pago se realizó de manera tardía. Según acordado por las partes, la parte recurrida conocía las consecuencias de no realizar el pago en la fecha acordada. Ahora bien, el Tribunal Supremo especificó que la fuerza mayor se ocasiona exclusivamente por la violencia de la naturaleza o por una fuerza de los elementos que la capacidad humana no puede prever ni impedir. *Camacho v. Cía. Popular de Transporte, supra*, pág. 729. A esos efectos, forzoso es concluir que la actuación del banco no constituyó fuerza mayor, pues no fue el resultado de la violencia de la naturaleza ni se trató de una situación extraordinaria que la capacidad humana no pudiera impedir. Por tal razón, el foro primario incurrió en el segundo señalamiento de error.

Por último, la parte peticionaria señaló que el TPI erró al ejercer su facultad moderadora sobre una cláusula penal previamente acordada entre las partes.

Puntualizamos que el Artículo 1257 del Código Civil de 2020, *supra*, sec. 9832, dispone que "[a]unque el tribunal tiene facultad para atemperar las penas en casos de extrema desproporción económica entre la pena y la prestación, debe reconocer la obligatoriedad de las cláusulas convenidas y solo en tales casos puede sustituirlas o moderarlas". *Coop. Sabaneña v. Casiano Rivera, supra*, pág. 175.

En este caso, recordemos que, la *Orden* emitida por el TPI fue a los fines de declarar No Ha Lugar a la solicitud de ejecución de

sentencia presentada por la parte peticionaria. Por lo que, en vista de que el foro primario no modificó o atemperó la pena por motivo de extrema desproporción, concluimos que no ejerció dicha facultad moderadora. Ciertamente su actuación se limitó a declarar No Ha Lugar a la imposición de la cláusula penal y ejecución de *Sentencia*. Por tanto, el TPI no cometió el tercer señalamiento de error.

A la luz de lo discutido anteriormente, resolvemos que el foro recurrido cometió los primeros dos señalamientos de error al denegar ejecutar la sentencia en virtud de un acuerdo transaccional. En ese sentido, conforme ha sido definido por nuestro máximo foro judicial, no podemos concluir que la actuación bancaria constituyó fuerza mayor. Por lo cual, corresponde que el foro primario ordene la ejecución de la *Sentencia* enmendada, según fuera solicitado por la parte peticionaria.

**IV.**

Por las razones discutidas anteriormente, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones